UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LOCAL 1992 PENSION FUND

                Plaintiff,　　　　　　　　　**REPORT AND RECOMMENDATION**
　　　　　　　　　　　　　　　　　　　　　　22-CV-02522 (HG) (JMW)
      -against-

ALL SERVICE EQUIPMENT CORP

                Defendant.
-------------------------------------------------------------X

**A P P E A R A N C E S:**

Sheri Dorothy Preece, Esq.
**McCarthy & Preece, PLLC**
118 North Bedford Road, Ste 100
Mount Kisco, NY 10549
*Attorney for Plaintiff*

*No Appearance by Defendant*

**WICKS,** Magistrate Judge:

        Plaintiff Local 1992 Pension Fund ("Pension Fund") commenced this action against All Service Equipment Corp ("All Service) on May 3, 2022, asserting claims of breach of a Collective Bargaining Agreement ("CBA") and seeking to enforce the requirements of the Employee Retirement Income Security Act ("ERISA"), §502, 28 U.S.C. §1132, *et seq.*, and the Labor-Management Relations Act ("LMRA"), § 301, 29 U.S.C. § 185.  (DE 1.)  Namely, Plaintiff asserts unpaid withdrawal liability owed to the Pension Fund pursuant to ERISA § 502(g)(2) and 4201(b), 29 U.S.C. § 1132(g)(2) and 1451(b).  (DE 1 at ¶ 18.)

        On referral from the Honorable Hector Gonzalez is Plaintiff's unopposed motion for default judgment (DE 10) for a Report and Recommendation (Electronic Order dated January 13, 2023.)  Plaintiff seeks a total of $97,553.89 broken down as follows: (i) $59,509.00 for

1

withdrawal liability, (ii) $16,960.07 for interest on withdrawal liability (iii) $16,960.07 for liquidated damages on withdrawal liability, (iv) $3,605.00 for attorney's fees and (v) $519.75 for costs associated with this action. (DE 10-4.)

For the reasons that follow, the undersigned respectfully recommends the instant motion (DE 10) be granted in its entirety.[1]

## BACKGROUND

### A. *Factual Background*

The following facts are taken from Plaintiff's complaint unless otherwise noted. (DE 1.) Plaintiff is a "multiemployer" pension benefit plan that provides benefits to eligible employees and dependents. (DE 1 at ¶¶ 6, 10.) The Pension Fund was established pursuant to a written agreement and declaration of trust ("Trust Indenture"). (DE 1 at ¶ 8.) All Service is a domestic corporation with its principal place of business in New York. (DE 1 at ¶ 3.) Plaintiff alleges that All Service was required to make contributions to the plans on the employees' behalf pursuant to the CBA between All Service and Local 1922 IBEW (the "Union"). (DE 1 at ¶ 9.) The CBA is dated June 1, 2018, through May 31, 2021, and, per its terms, automatically renews every year unless either party gave notice of termination or modification. (DE 1 at ¶ 9.) No such notice has been given by any party. (DE 1 at ¶ 9.)

On September 30, 2020, All Service withdrew from the Pension Fund by "permanently ceasing all covered operations under the Pension Fund." (DE 1 at ¶ 11-12.) The Pension Fund subsequently asserted that it was entitled to withdrawal liability in the amount of $59,509.00 under ERISA § 4201(a), 29 U.S.C. § 1381(a). (DE 1 at ¶ 13.) On June 2, 2021, the Pension

---

[1] Additionally, the same day that Plaintiff filed the instant motion, Plaintiff also filed a corrected exhibit. (*See* DE 11.) However, it appears the corrected exhibit was incorrectly filed as a separate motion. That "motion" (DE 11) is hereby administratively terminated.

Fund sent a demand letter to All Service for withdrawal liability pursuant to ERISA § 4219(b), 29 U.S.C. § 1399(b). (DE 1 at ¶ 14.) On November 16, 2021, a notice of default and demand of payment was sent to All Service regarding unpaid withdrawal liability to the Pension Fund. (DE 1 at ¶ 15.) All Service failed to respond. (DE 1 at ¶ 15.)

### B. *Procedural History*

The complaint was filed on May 3, 2022 (DE 1), and a summons was issued as to All Service on May 9, 2022. (DE 6.) All Service was served on June 15, 2021 via the New York Secretary of State and was required to respond to the complaint no later than July 6, 2021. (DE 7.) All Service failed to answer or otherwise respond to the complaint.

On October 3, 2022, the Court directed Plaintiff to file, on or before October 21, 2022, a request for a certificate of default or a status report regarding the status of the case otherwise the Court would consider issuing a Report and Recommendation to the presiding District Judge that this matter be dismissed pursuant to Fed. R. Civ. P. 41 (b) for a failure to prosecute. (Electronic Order dated October 3, 2022.) Plaintiff requested a certificate of default on October 18, 2022 (DE 8), which was entered by the Clerk of the Court on October 21, 2022. (DE 9.) Plaintiff then filed its motion for default judgment on January 10, 2023 (DE 10), which is currently before the Court.

## LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b). The decision to grant a

3

motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at *4).

However, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The court must therefore ensure that (1) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and that (2) Plaintiff's allegations, when

4

accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84, and that (3) Plaintiff's request for damages is adequately supported.

## DISCUSSION

### A. *Procedural Compliance*

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1)-(3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application to the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. E.D.N.Y. Local R. 55.2(b)-(c).

Plaintiff's motion for default judgment (DE 10) includes a proposed judgment (DE 10-4), a memorandum of law (DE 10-2), a declaration in support (DE 10-3), a copy of the complaint & exhibits (DE 10-5), a copy of the certificate of default (DE 10-6), and the affidavit of service confirming service of the motion for default judgment on All Service. (DE 10-1.) The motion thus complies with the local civil rules.

Moreover, before judgment can be entered for the plaintiff, the SCRA commands that the court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD)(JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). However, this requirement does not apply to corporate

5

defendants and thus not implicated here. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

Additionally, All Service was served on June 15, 2021 via the New York Secretary of State, which is proper service. (DE 7.) A corporation may be served in accordance with the law of the state where the federal district court sits or where service is effectuated. *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Under New York law, the Secretary of State is the designated agent for service for corporations. N.Y. Bus. Corp. Law § 306(b)(1); *see also Baker v. Latham*, 72 F.3d 246, 255-56 (2d Cir. 1995). Though the Secretary of State must send copies of papers served to the address on file, it is axiomatic that "[s]ervice of process [on a corporation] shall be complete when the secretary of state is . . . served." *See Baker*, 72 F.3d at 255. That is, from a plaintiff's perspective, once proper service is made upon the Secretary of State, service on the corporation has been effectuated.

Accordingly, the Court finds that Plaintiff's motion for default judgment is procedurally proper and now turns to the merits of the motion.

**B.** *Default Factors*

In evaluating whether to grant a default judgment, courts consider (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation*

*adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors counsels toward an entry of default judgment where, as here, Defendant All Service has wholly failed to appear and present any sort of defense, and Plaintiff is left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts, Inc.*, 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3-4 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

### C. *Liability and Principal Damages*

Pursuant to 29 U.S.C. § 1381(a), "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the

7

amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). Under § 4203(a) of ERISA, 29 U.S.C. § 1383(a), "a complete withdrawal from a multiemployer plan occurs when an employer-- (1) permanently ceases to have an obligation to contribute under the plan; or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

"Following withdrawal from a plan, the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment." *Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (quoting *Burke v. Hamilton Equip. Installers, Inc.*, No. 02-CV-519, 2006 WL 3831380, at *4 (W.D.N.Y. Oct. 16, 2006), *aff'd*, 528 F.3d 108 (2d Cir. 2008)). "[T]he notice must include the amount of the liability, a schedule for liability payments, and a demand for payment in accordance with the schedule." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1399(b)(1)).

Once an employer receives notice it has 60 days to begin payment in accordance with the payment schedule irrespective of whether it requests review of the decision. *Id*. at 222 (citing 29 U.S.C. § 1399(c)(2)). An employer is in "default" in making payments pursuant to the payment schedule upon: "the failure of an employer to make a scheduled payment, when that failure is not cured within 60 days after written notification from the plan of the failure; or 2) any event defined in rules adopted by the plan that indicates a 'substantial likelihood' that the employer will be unable to pay withdrawal liability." *Id*. (citing 29 U.S.C. § 1399(c)(5)(A) and (B)). Upon default, "the plan may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the

8

date of the first scheduled payment that was not timely made." *Id*. (citing 29 U.S.C. § 1399(c)(5)).

Disputes related to withdrawal liability assessments are settled through arbitration in the first instance, and that process must be initiated by the earlier of 60 days following notification to the employer regarding the post-review decision or 180 days after the employer requests review. *Id*. "Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded." *Id*.

Here, Plaintiff alleges that on or about September 30, 2020, All Service "permanently ceas[ed] all covered operations under the Pension Fund." (DE 1 at ¶ 11.) Plaintiff's actuary determined Plaintiff was entitled to $59,509.00 in withdrawal liability principal. (DE 1 at ¶ 13.) By letter dated June 2, 2021 (DE 10-10), Plaintiff "notif[ied] [defendant] of [its] withdrawal liability, set a payment schedule, and formally demand[ed] payment." *See Gesualdi*, 97 F. Supp. 3d at 97 (citations omitted). On November 16, 2021, Plaintiff also sent a notice of default and demand of payment of $59,509.00 within ten (10) days of receipt of said letter. (DE 1 at ¶ 15.) Plaintiff has not received a response from All Service as to either letter. (*Id*.)

Moreover, the withdrawal liability amount was calculated by the Pension Fund's actuary (DE 10-9), which is sufficient to establish the amount of withdrawal liability, even without an explanation as to the method utilized for calculating the amount. *See Daniello v. Planned Sys. Integration Ltd.*, 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009) (finding a letter by the Fund's actuary stated the withdrawal liability amount calculated under the "presumptive method" is "statutorily sufficient to permit an award of the damages").

Thus, the Court finds that Plaintiff has sufficiently alleged withdrawal liability and adequately supported its request for $59,509.00 in damages.

9

D. *Interest, Liquidated Damages and Attorneys' Fees*

Pursuant to ERISA, if an employer fails to make contributions in accordance with the CBA, the court must award the plan damages as follows:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

*Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(g)(2)).

Further, "ERISA provides that [i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 1145 of this title)." *Id*. at 98 (internal quotation marks omitted). Thus, withdrawal liability "damages are to be calculated 'in the same manner as' unpaid benefit contributions." *Id*. at 103 (quoting 29 U.S.C. § 1451(b)).

i. Interest

Plaintiff correctly argues that under ERISA, it is entitled to interest on the withdrawal liability at the rate determined by the Pension Fund Trust Indenture (DE 10-8). Plaintiff is entitled to interest under ERISA, and interest is "determined by using the rate provided under the

10

plan." *See* 29 U.S. Code § 1132(2). Pursuant to the Trust Indenture, on withdrawal liability, Plaintiff shall receive interest calculated at 1.5% per month and 18% annually from the date the payment was due to when payment is made. (*See* DE 10-8 at 14-15.) For the purposes of calculating payments presently overdue, the calculation period runs to the date of the instant motion, which was filed on January 10, 2023. (DE 10.)

Plaintiff sets forth that the All Service was notified of its $59,509.00 withdrawal liability on June 2, 2021 and again on November 16, 2021 but failed to respond either notice. (DE 10-3 at ¶¶ 12-14.) Interest calculated at a rate of 1.5% per month results in a monthly total of $892.635. This amount multiplied by 19 months when counting June, 2021 through January 2023, results in a total of $16,960.065 in interest, which tracks the calculation in the affidavit provided by counsel. (DE 10-3 at ¶ 17.)

Accordingly, Plaintiff has sufficiently supported its request for interest on unpaid contributions and withdrawal liability. *See Trustees of the Loc. 807 Lab. Mgmt. Health Fund v. Express Haulage Co.*, No. 07-CV-4211 (NG)(CKO), 2008 WL 4693533, at *8 (E.D.N.Y. Oct. 23, 2008) ("The Trust Agreement makes clear that defendant owes interest on its withdrawal liability at 18% per annum . . . ."); *Daniello*, 2009 WL 2160536, at *6 ("Here, the plan provided (in the Trust Agreement) that interest would accrue on unpaid contributions at the rate of 18% per annum."). And interest should continue to accrue at the rate of 1.5% per month until the date judgment is entered. *See Gesualdi*, 97 F. Supp. 3d at 102 ("And, because the principal amount remains outstanding [interest] . . . shall continue to accrue for each day until judgment is entered.").

11

ii. Liquidated Damages

Plaintiff argues that it is also entitled to liquidated damages. Plaintiff is entitled to additional damages in an amount equal to the greater of "(i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions." *See Gesualdi*, 97 F. Supp. 3d at 104 (citing 29 U.S.C. §§ 1132(g), 1451(b)). The Trust Indenture provides for the collection of liquidated damages in an amount (1) equal to the greater of the interest at the rate of 1.5% per month or 18% per year on the withdrawal liability; or (2) an amount not to exceed 20% of the withdrawal liability. (*See* DE 10-8 at 15-16.)

As discussed above, the interest on withdrawal liability equates to a total of $16,960.07. And 20% of the total $59.509 withdrawal liability amounts to $11,901.80, as reflected in counsel's affidavit. (DE 10-3 at ¶ 19. Here, the interest on withdrawal liability is greater than 20% of withdrawal liability. Accordingly, Plaintiff is entitled to $16, 960.07 in liquidated damages.

iii. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees in the amount of $3,605.00 as well as $519.75 in costs, totaling $4,124.75. (DE 10-2 at 9-10; DE 10-4.) ERISA expressly provides for a mandatory award of "reasonable attorney's fees and costs of the action, to be paid by the defendant[.]" 29 U.S. Code § 1132(g)(2)(D); *see Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement.").

This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). When considering

applications for attorneys' fees, courts apply the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Id.* at 166.

Plaintiff's counsel Sheri D. Preece has provided billing records with an itemized breakdown of hours and descriptions of each task conducted. (*See* DE 10-12 at 1-2.) Those records reflect that Preece worked 10.30 hours on this case at a rate of $350 per hour. (*Id.*) The hours expended are reasonable for this case. *See, e.g., Gesualdi v. Bestech Transp., LLC,* No. 14-CV-1110 (JS)(ARL), 2022 WL 866853, at *5 (E.D.N.Y. Mar. 23, 2022) (finding 22.3 hours reasonable in the ERISA default judgment context).

Further, Preece's affidavit reflects that she is a named partner at McCarthy and Preece, PLLC with over a decade of experience with "labor law and ERISA law, representing unions, multiemployer welfare fund[s], and multiemployer pension funds." (DE 10-3 at ¶¶ 20-21.) The Court finds that considering the hourly rates found reasonable in ERISA actions in this district, Preece's hourly rate of $350 is reasonable in light of her background and experience. *See Gesualdi*, 2022 WL 866853 at *3 ("Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in ERISA cases") (collecting cases). At a $350 hourly rate and 10.30 hours, the total lodestar is $3,605, which is precisely what Preece requests, and thus, is reasonable.

As to costs, "[t]he party seeking to recover costs 'bears the burden of adequately documenting and itemizing the costs requested.'" *Id*. at *5 (quoting *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020)). Preece requests $519.75 in costs comprised of $400 for the filing fee and $119.17 for the service of process fee. (DE 10-3 at ¶ 23.) "Precedent supports the inclusion of filing fees and the costs of process service as part of the damage award in an ERISA action." *See Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *15 (E.D.N.Y. Sept. 5, 2019), *report and recommendation adopted*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019). Preece has provided documentation to support the service of process fee (DE 11 at 2), and the $400 filing fee (*Id*. at 1), which is sufficient. *See id*. (noting that the Court can simply "take[] judicial notice of the required $400.00 filing fee").

Accordingly, the undersigned recommends awarding Plaintiff $4,124.75 consisting of $3,605.00 in attorneys' fees and as $519.75 in costs.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends Plaintiff's motion for default judgment be granted and Plaintiff be awarded $97,553.89 broken down as follows: (i) $59,509.00 for withdrawal liability, (ii) $16,960.07 for interest on withdrawal liability (iii) $16,960.07 for liquidated damages on withdrawal liability, (iv) $3,605.00 for attorneys' fees, and (v) $519.75 for costs associated with this action.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants via first-

class mail and via email and promptly file proof of service on ECF <u>within two business days</u>. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:       Central Islip, New York
             July 28, 2023

                                                                            RESPECTFULLY RECOMMENDED,

                                                                            /S/ *James M. Wicks*
                                                                             JAMES M. WICKS
                                                                    United States Magistrate Judge